JS-6
"O"

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELDON PITTLEMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>     v.<br><br>IMPAC MORTGAGE HOLDINGS, INC., et al.,<br><br>            Defendants. | CASE NO. SACV 07-0970 AG (MLGx)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT |

Defendants Impac Mortgage Holdings, Inc., Joseph R. Tomkinson, and William S. Ashmore ("Defendants") brought a Motion to Dismiss (the "Motion") the Third Amended Class Action Complaint (the "TAC"). After considering the parties' arguments, the Court GRANTS the Motion.

The Court grants the Motion without leave to amend. Plaintiff has had three chances to submit a valid complaint – the Consolidated Class Action Complaint, the Second Amended Class Action Complaint (the "SAC"), and the TAC. Plaintiff has failed to do so. At this point, it is clear to the Court that further opportunities will not help.

**BACKGROUND**

Plaintiff claims that Impac's stock price was artificially inflated during the class period. (Motion to Dismiss the SAC 4:17-19.) Impac is a publicly-traded mortgage lender. (*Id.* 4:20-21.) During the class period, Tomkinson was CEO and Chairman of the Board, and Ashmore was Executive Vice President and Chief Operating Officer. (*Id.* 4:25-28.) Impac specializes in "Alt-A" loans, which are more stable than sub-prime loans but are not eligible for sale to prime lenders. (*Id.* 5:13-16.) Plaintiff is an investor who lost money investing in Impac. (*Id.* 2:15-16.)

In the SAC, Plaintiff relied primarily on statements made by five anonymous former employees ("FEs") and a host of Internet bloggers. The Court granted Defendants' motion to dismiss the SAC with leave to amend. (Oct. 6, 2008 Order.) The Court found that Plaintiff failed to sufficiently allege scienter and material misrepresentation. (*Id.*)

The TAC alleges two claims for relief. The first claim is for violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, against all defendants. The second claim is for violation of Section 20(a) of the Exchange Act, against the individual defendants. In the TAC, Plaintiff has removed the bloggers' statements. The statements made by FEs 2, 3, and 5 are basically unchanged. The statements made by FE4 are changed slightly. The statements made by FE1 are changed significantly.

**LEGAL STANDARD**

Private federal securities fraud actions are based on Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5). Section 10(b) forbids (1) the "use or employ[ment] . . . of any . . . deceptive device," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of" Securities and Exchange Commission "rules and regulations." SEC Rule 10b-5 forbids making any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b-5.

To state a claim under § 10(b), a plaintiff must plead six basic elements: (1) a strong inference of scienter,  (2) a material misrepresentation or omission, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation.  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

When a plaintiff alleges fraud, a heightened pleading standard is applied and the plaintiff "must aver with particularity the circumstances constituting the fraud." FED. R. CIV. P. 9(b). The particularity requirement is designed "to give defendants notice of the particular conduct which is alleged to constitute the fraud so they can defend against the charge and not just deny that they have done anything wrong."  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) (quoting *Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993)).  To provide this notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the fraudulent activity." *Id.*

This is especially true in the context of private federal securities fraud actions.  The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes stringent pleading requirements on securities plaintiffs and evidences a desire to "provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332-33 (3d Cir. 2002).  The PSLRA is designed "generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'" *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1084-85 (9th Cir. 2002).

**ANALYSIS**

**1.   PLAINTIFF'S FIRST CLAIM FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT**

Plaintiff brings his first claim for violation of Section 10(b) against all Defendants. Defendants argue that Plaintiff has not properly alleged the first, second, and sixth elements of a private securities fraud claim: scienter, material misrepresentation, and loss causation.

1  Plaintiff has not properly alleged scienter.  Thus, the Court does not reach the questions
2  of whether Plaintiff has properly alleged material misrepresentation or loss causation.
3  Scienter – a wrongful state of mind – requires a showing of fraudulent intent or
4  "deliberate or conscious recklessness." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 979
5  (9th Cir. 1999).  Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a
6  strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-
7  4(b)(2).  The Supreme Court has construed this language to mean that, to state a claim under
8  § 10(b), an inference of scienter must "be more than merely plausible or reasonable – it must be
9  cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs,*
10 *Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504-05 (2007).
11 Like the SAC, the TAC fails to plead a strong inference of scienter.  In the order granting
12 the motion to dismiss the SAC, the Court noted that the FEs' statements were often "so vague as
13 to be meaningless," amounted to "nothing more than vague, blanket obligations," and were "too
14 generic to satisfy the scienter requirement."  (Oct. 6, 2008 Order.)  The TAC adds little new
15 information, relying primarily on additional statements from FE1.  The TAC's new information
16 is not enough.  It is true, as Plaintiff points out, that Plaintiff's factual allegations must be viewed
17 in the aggregate.  "*Tellabs* counsels us to consider the totality of circumstances, rather than to
18 develop separately rules of thumb for each type of scienter allegation." *South Ferry LP #2 v.*
19 *Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).  Even viewed in this light, Plaintiff's factual
20 allegations are still not sufficient to plead a strong inference of scienter.
21 FE1's new statements are just more vague accusations and conjecture.  FE1 says that
22 Ashmore and Tomkinson's actions were "in violation of standard due diligence procedures."
23 (TAC ¶ 49.)  But FE1 never identifies specific actions or specific due diligence procedures.  FE1
24 says that "when bulk loan pools did not satisfy [Impac's] guidelines, they were still approved by
25 management on a regular basis . . . ." (*Id.* ¶ 48.)  But FE1 does not specify particular loan pools
26 or why they did not satisfy Impac's guidelines.
27 FE1 states that Novelle, a division of Impac, "had so many bad loans (loans that did not
28 comply with [Impac] underwriting Guidelines), that the division was closed and the loans were

securitized and sold to investors." (TAC ¶ 50.) FE1 also recalls the "significant pressure" to approve one loan pool, the purchase of another loan pool that "did not meet underwriting guidelines," and the existence of "certain companies [that] were notorious for selling bulk loan pools" to Impac. (*Id.*) All of these assertions are too vague to plead a strong inference of scienter.

Finally, FE1 says that he "left the Company out of frustration because he said the majority of loans that were being recommended for rejection were regularly approved for sale to investors." (TAC ¶ 51.) Again, this statement is too vague and general. FE1 does not say which loans were recommended for rejection, why they were recommended for rejection, or who approved them for sale.

The TAC contains new statements from FE4, although far fewer than from FE1. The new statements from FE4 include assertions that he had "disagreements regarding the loan approval process on a regular basis" and that he "saw it all the time where we'd deny it [a loan] and they say, yeah, we could do this." (TAC ¶¶ 62, 65.) These vague statements are insufficient to support a finding of scienter.

Plaintiff tries to rely on the "core operations inference" to argue that it has sufficiently pled scienter. Under the core operations inference, "facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers." *South Ferry*, 542 F.3d at 783. The core operations inference permits an inference of scienter in "exceedingly rare" cases where an event is so prominent that it would be "absurd" to suggest that key officers lacked knowledge of it. *Id.* at 785-86. Here, Plaintiff's vague allegations of violations are not one of these "exceedingly rare" cases. The core operations inference does not apply.

Plaintiff fails to plead facts that give rise to a strong inference that either Ashmore or Tomkinson made any "deliberately reckless or conscious" misrepresentations. Because Plaintiff fails to plead scienter on the part of Ashmore or Tomkinson, Plaintiff cannot successfully plead scienter on the part of Impac. "[A] defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite

5

level of scienter." *Glazer Capital Mgmt. LP v. Magistri*, 2008 WL 5003306 at * 7 (9th Cir. Nov. 26, 2008); *see also Nordstrom, Inc. v. Chubb & Som, Inc.*, 54 F.3d 1424, 1435-36 (9th Cir. 1995). Neither Ashmore nor Tomkinson has the requisite level of scienter. Thus, Impac does not have the requisite level of scienter.

## 2. PLAINTIFF'S SECOND CLAIM FOR VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT

Because Plaintiff fails to allege a primary violation under Section 10(b), Plaintiff also fails to allege a secondary liability claim under Section 20(b). 15 U.S.C. § 78t(a); *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

## 3. CONCLUSION

Plaintiff argues that this case is about "a staggering race-to-the-bottom of loan quality and underwriting standards as part of an effort to originate more loans for sale through secondary market transactions." (Opp'n 14:20-23 (quoting *In re New Century*, 2008 U.S. Dist. LEXIS 101496 at * 66 (C.D. Cal. Dec. 3, 2008).) The Court disagrees. This case is about a company involved in a volatile industry at the onset of a long, destructive economic downturn.

Plaintiff fails to state with particularity facts giving rise to a strong inference that either Ashmore or Tomkinson acted with the required state of mind. The PLSRA was intended to guard against exactly these sorts of vague, conclusory allegations. Thus, the Complaint fails to plead a strong inference of scienter.

**DISPOSITION**

The Court GRANTS the Motion, without leave to amend. The Court invites Defendants to submit a judgment.

IT IS SO ORDERED.

DATED: March 9, 2009

                                                          _____
                                                            Andrew J. Guilford
                                                           United States District Judge